Jennifer M. Lantz (SBN 202252)
Jeremy T. Elman (SBN 223696)
Lauren C. Matturri (*Pro Hac Vice* application pending)
**DUANE MORRIS LLP**
260 Homer Avenue, Suite 202
Palo Alto, CA  94301-2777
Phone:          650-847-4150
Facsimile:     650-847-4151
Email:          jmlantz@duanemorris.com
                    jelman@duanemorris.com
                    lmatturri@duanemorris.com

Attorneys for Plaintiffs
VLADIMIR TENEV and
ROBINHOOD MARKETS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADIMIR TENEV AND ROBINHOOD MARKETS, INC. <br><br><br>                          Plaintiffs, <br><br>          v. <br><br> LIBIN ZHU; DYNADOT INC.; VLADTENEV.COM; AND DOES 1-10 <br><br>                          Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **1.  VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))** <br><br> **2. VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)(2)) IN THE ALTERNATIVE** <br><br> **3.  FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)** <br><br> **4.  FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))** <br><br> **5.  VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAWS (Cal. Bus. & Prof. Code § 17200 *et seq.*)** <br><br> **6.  COMMON LAW TRADEMARK INFRINGEMENT** <br><br> **7. VIOLATION OF CALIFORNIA CIVIL CODE 3344 et seq,** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff VLADIMIR TENEV ("Mr. Tenev") and the company he founded and is employed by, Plaintiff Robinhood Markets, Inc., ("RHM") (collectively, "Plaintiffs") as and for their Complaint against Defendants LIBIN ZHU ("Zhu"); DYNADOT INC. ("Dynadot"); and DOES 1-10 ("Does") (collectively, "Defendants") allege:

## NATURE OF ACTION

1.      By this action, Plaintiffs seek to stop the ongoing infringement of Mr. Tenev's highly reputable trademark, name, and likeness, which he has used extensively in his personal capacity, and which RHM has used extensively to promote its business. Plaintiffs bring this action based on Defendants' past, current, and planned use of the domain name VLADTENEV.COM ("Disputed Domain") and allege claims for federal trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114(1) and 1125(a), for cybersquatting under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1), and for substantial and related claims of unfair competition, common law trademark infringement, and violation of Mr. Tenev's rights of personality arising under California law.

2.      Mr. Tenev is professionally known as Vlad Tenev, a well-known American businessman and entrepreneur. He is the co-founder, Chairman, and CEO of Robinhood Markets, Inc., a famous financial services company that makes investing available and affordable for people at all income levels. Mr. Tenev is also the co-founder and Executive Chairman of the artificial intelligence startup Harmonic. Mr. Tenev is the owner of common law trademark rights in his name VLAD TENEV, which is central to this action and discussed more fully below, as well as rights in his name, image and likeness, and has applied to register his mark as well. Mr. Tenev is also the face of RHM, and regularly promotes both his own and RHM's business interests under his name.  RHM also uses Mr. Tenev's name and likeness with his consent to promote its business, and Mr. Tenev is closely associated with RHM. The basis for this Complaint is Mr. Tenev's ownership and rights in the use of his VLAD TENEV trademark and its use by him and by RHM in connection with the promotion of its business, as discussed in detail below.

3.      VLAD TENEV is a distinctive mark given that it is Mr. Tenev's personal name which, through extensive commercial and public use, has acquired secondary meaning as a

1

trademark uniquely identifying Mr. Tenev and RHM.

**PARTIES**

4.      Plaintiff VLADIMIR TENEV, an individual, professionally known as Vlad Tenev, is an American businessman and entrepreneur, and a resident of California and this District.

5.      Plaintiff RHM is a Delaware corporation with a principal place of business located at 85 Willow Road, Menlo Park, California 94025, in the County of San Mateo.

6.      Plaintiffs are informed and believe and thereupon allege that Defendant LIBIN ZHU ("Zhu") is an individual located in Paris, France, who has participated in, or caused to occur, the acts hereinafter complained of within the Northern District of California.

7.      Defendant DYNADOT INC ("Dynadot") is a Californian general stock corporation organized under the laws of California with a principal place of business located at 205 East 3rd Avenue, Suite 314, San Mateo, California 94401, in the County of San Mateo.

8.      Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs and therefore, are sued under fictitious names. Their true names, capacities and respective liabilities are unknown to Plaintiffs at this time. When their true names, capacities and respective liabilities are ascertained, Plaintiffs will amend this Complaint to show the true names and capacities of DOES 1 through 10. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is a claimant or otherwise claims an interest in the assets at issue in this action.

9.      On information and belief, at all times mentioned herein, there existed a unity of interest and ownership between Defendants, such that any individuality and separateness among them has ceased, and that Defendants, and each of them, are the alter egos of each other. On information and belief, Defendants have used the assets of the Defendants for each of their own purposes and uses and caused the assets of the other Defendants to be transferred to them without adequate consideration and without following corporate formalities. On information and belief, Defendants have made payments to, and paid the expenses of, one another unrelated to their own respective businesses.

10.      On information and belief, Defendants have exercised complete control and dominance over one another and have failed to follow corporate formalities. On information and

COMPLAINT

belief, each of the Defendants directly received for themselves the benefits of the transactions described herein and commingled assets and obligations of the other Defendants with their own in contravention of the fiction of their separate existence. Adherence to the fiction of the separate existence of Defendants as entities distinct from one another would permit an abuse of the corporate privilege and would promote a fraud and/or injustice.

11.   At all times relevant to this action, Defendants have owned, maintained and controlled the Disputed Domain.

**JURISDICTION AND VENUE**

12.   This action arises, in part, under the Lanham Act, 15 U.S.C. § 1125, *et seq.* ("Lanham Act") and under the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125, *et seq*. ("ACPA"), and this Court therefore has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

13.   The Court has supplemental jurisdiction over Plaintiffs' claims arising under California state law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to Plaintiffs' Lanham Act claim and ACPA claim that they form part of the same case and/or controversy and derive from a common nucleus of operative facts.

14.   This Court has personal jurisdiction over Defendants because Defendants have directed tortious acts that they knew or should have known would cause injury to Plaintiffs in this District. Further, Defendant Dynadot, an entity involved in the development, governance and expansion of the Disputed Domain, resides in California and in this District and has continuous, systematic and substantial contacts with the State of California.

15.   The Court has specific personal jurisdiction over Defendant registrants and/or owners of the Disputed Domain because they have registered the Disputed Domain with Dynadot, a Northern California-based domain registrar. A true and correct copy of the WHOIS information available for the Disputed Domain listing Dynadot under Registrar Information is attached as **Exhibit A**.

16.   In the alternative, this Court also has *in rem* jurisdiction over the Disputed Domain pursuant to 15 U.S.C. § 1125(d)(2)(A). The Disputed Domain is deemed to have its situs in the judicial district where the domain name registrar, registry, or other domain name authority that

COMPLAINT

registered or assigned the domain name is located. The Disputed Domain has been registered with a domain registrar in this district, Defendant Dynadot.

17.     Dynadot requires its registrants to consent to personal jurisdiction in this Court for disputes involving Dynadot domain names, such as that of the Disputed Domain, and registrants, such as Defendant Zhu. Specifically, the Dynadot Terms of Service, to which all Dynadot registrants must agree, provide that:

"7   DISPUTES

7.1   For the adjudication of disputes concerning or arising from use of a domain name, You shall submit, without prejudice to other potentially applicable jurisdictions, to:

a)   The jurisdiction of the courts of Your domicile; and,

b)   The jurisdiction of the United States District Court for the Northern District of California."

A true and correct copy of the Dynadot Terms of Service is attached as **Exhibit B**.

18.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district and Defendants conduct business in this judicial district. In particular, Defendants have used the VLAD TENEV mark in the judicial district.

19.     In the alternative, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this district due to the location of Defendant Dynadot—the registrar of the Disputed Domain—in this judicial district, and pursuant to 15 U.S.C. § 1125(d)(2) because Defendant Dynadot—and the property forming the basis of *in rem* jurisdiction for the Disputed Domain—is located in this judicial district.

## INTRADISTRICT ASSIGNMENT

20.     Assignment to the San Francisco or Oakland Division is proper under Civ. Loc. Rule 3-2(d) because Plaintiff RHM has offices in the County of San Mateo.

///

///

4

COMPLAINT

**PLAINTIFFS' VALUABLE MARK**

21.     VLAD TENEV is a distinctive mark given that it is Mr. Tenev's personal name which, through extensive commercial and public use, has acquired secondary meaning as a trademark uniquely identifying him with respect to his public speaking services.

22.     After graduating from Stanford University with a Bachelor of Science degree in mathematics and earning a master's degree in mathematics from UCLA, Mr. Tenev cofounded an algorithmic trading software company called Celeris in 2010 with co-founded with a partner and fellow Stanford alumnus.

23.     In early 2011, Mr. Tenev and his co-cofounder created Chronos Research, which sold low-latency software to trading firms and major banks.

24.     In 2013, Mr. Tenev and co-cofounder founded Robinhood Markets, Inc. ("Robinhood"), which currently offers self-directed investing in stocks, options, ETFs, futures, and cryptocurrency. In the years since its founding, Robinhood has gained national prominence for its mission to democratize finance for all and experienced substantial growth.

25.     As RHM has grown in popularity and recognition, Mr. Tenev, who is currently the Chairman and CEO of RHM (*see* **Exhibit C**), has gained fame and recognition due to his founding of, and employment at, RHM, among his other accomplishments.

26.     Mr. Tenev has been a face of RHM since its founding, and, in conjunction with RHM, has extensively promoted RHM's platform and related goods and services. These efforts have been extraordinarily successful. Between 2014 and the end of the fourth quarter of 2025, RHM went from 0.5 million customers to over 27 million customers. As of January 2026, RHM had 27.2 million funded customers. *See* **Exhibit D**. On February 26, 2026, RHM was the 39th most downloaded finance app on the Google Play Store and 23rd most downloaded finance app on the iOS App store. *See* **Exhibit E**.

///

///

///

///

5

COMPLAINT

27. Mr. Tenev is regularly involved in events and engagements where he is the face of RHM. For instance, he leads all of RHM's quarterly earnings calls and annual meetings, hosts various events and summits, and is routinely featured on RHM's social media accounts.







///

///

///

///

///

COMPLAINT

28.    Mr. Tenev's strong affiliation with RHM has created a secondary meaning from which RHM and Mr. Tenev benefit.

29.    Mr. Tenev currently has over 375,000 followers on his personal Twitter (now known as X) account at https://x.com/vladtenev, which uses his VLAD TENEV name and mark. Mr. Tenev first started using his X account in June 2012 to promote himself, his services, and his companies, including RHM. *See* **Exhibit F**.

30.    Mr. Tenev regularly speaks and gives presentations on entrepreneurship, the financial services industry and other financial-related topics using his VLAD TENEV name and mark. For example, in 2019, Mr. Tenev gave the commencement keynote address at his alma mater UCLA Mathematics. Last year, Mr. Tenev spoke at TEDAI San Francisco, a leading TED conference exploring the impact and power of AI. In 2025 he was also a speaker at the Bitcoin 2025 conference. He is also a regular interviewee on financial news outlets and podcasts where he often discusses RHM. Further, as part of his involvement in RHM, Mr. Tenev regularly participates in discussions on the future of the finance industry. *See* **Exhibit G**.



All In on the Future: A Conversation with Vlad Tenev & Jason Calacanis
Robinhood
68.9K subscribers    Subscribe
326    Share    Ask    Save    Download    ...

///

///

///

///

7





COMPLAINT



31.    Mr. Tenev uses his name VLAD TENEV as a trademark to promote his availability for speaking engagements, including through an online site where interested parties may book him for speaking engagements and events under the VLAD TENEV mark. *See* **Exhibit H**.

9

32. Mr. Tenev has also been the frequent subject of news articles regarding his career and current involvement at RHM and has received industry recognition, including:

  i. Forbes 30 Under 30 (2016)

  ii. Inc. Magazine 20 Young Entrepreneurs You Need to Know (2016)

  iii. Fortune 40 Under 40 (2018)

  iv. Forbes 30 Under 30 Hall of Fame (2022)

  v. Fortune's Most Powerful People in Business (2025)

*See* **Exhibit I**.

33. Mr. Tenev has been offering his speaking-focused services under the VLAD TENEV trademark in U.S. commerce since at least as early as 2016.

34. Mr. Tenev uses the VLAD TENEV mark to promote himself, and as part of being the spokesman for RHM, for example in speaking engagements. In this way, Mr. Tenev recognizes the value of his name as a marketing tool for both himself and RHM.

35. Upon conducting a Google search for VLAD TENEV, the vast majority of results pertain to Mr. Tenev and his involvement with RHM. *See* **Exhibit J**.

36. Mr. Tenev has also been featured on talk shows and podcasts, including How I Built This with Guy Raz, Rapid Response, and Leadership Next, discussing his journey from an immigrant to the founder of multiple high-tech companies.

37. Based on his consistent and continuous use as noted above, Mr. Tenev has developed common law trademark rights in the VLAD TENEV mark.

38. On March 6, 2026, Mr. Tenev filed U.S. Trademark Application Serial No. 99687068 for the standard character mark **VLAD TENEV** in connection with "Educational and entertainment services, namely, providing motivational speaking services in the field of finance, fintech, economics, business, business leadership and artificial intelligence" in Class 41. The application was filed based on use and asserts a date of first use in U.S. commerce that is at least as early as December 31, 2016. A true and accurate copy of the trademark application is attached as **Exhibit K**.

39. Mr. Tenev is the senior user of the VLAD TENEV mark and has established sufficient market penetration to show secondary meaning.

10

40.    Mr. Tenev has maintained and continues to maintain the highest standards of quality in the speaking and entertainment services offered under the VLAD TENEV mark.

41.    Mr. Tenev's use of the VLAD TENEV trademark is not merely descriptive or biographical. Rather, Mr. Tenev has continuously and exclusively used his name in commerce as a distinctive identifier of the professional services, leadership, expertise, and business ventures he provides and promotes. Through speaking engagements, media appearances, executive leadership roles, and public-facing promotion of RHM, the VLAD TENEV mark functions as a source identifier uniquely associated with Mr. Tenev.

42.    As a result of Mr. Tenev's efforts, including those described above, the VLAD TENEV mark has acquired substantial value and goodwill. The VLAD TENEV mark has become known to the relevant consumers and industry as a distinctive identifier associated with Mr. Tenev and his services, such that Mr. Tenev has established common law trademark rights in the VLAD TENEV name and trademark sufficient to maintain this action.

43.    Mr. Tenev is also the co-founder and Executive Chairman of the artificial intelligence startup Harmonic. Recognizing the value of his VLAD TENEV name and mark as a signifier of his business expertise, Mr. Tenev emphasizes his involvement in the company and features his name and likeness on the company website. *See* **Exhibit L**. The association of Mr. Tenev's VLAD TENEV mark with the company is valuable and bolsters the reputation of Harmonic.

## <u>DEFENDANTS' WRONGFUL CONDUCT IS PART OF A PATTERN OF BAD FAITH CONDUCT</u>

44.    The Disputed Domain was first registered on July 15, 2020. However, the WHOIS, Name server, and IP history show that the Disputed Domain lapsed and was not registered by the current owner, Defendant Zhu, until on or about October 28, 2025. *See* **Exhibits M** and **N**. Accordingly, Defendants' acquisition of the Disputed Domain occurred well after Mr. Tenev had established common law trademark rights in the VLAD TENEV mark.

45.    The Disputed Domain Name resolves to a website offering the domain for sale for $16,800 as of January 5, 2026. *See* **Exhibit O** and screenshot below.

11

COMPLAINT



46.     Thus, upon information and belief, Defendants' registration and use of the Disputed Domain, which fully incorporates Mr. Tenev's VLAD TENEV mark, is a bad faith attempt to exploit Mr. Tenev's and RHM's valuable goodwill and reputation in the mark for commercial gain.

47.     Defendants' use of the VLAD TENEV mark is identical to the Disputed Domain, which is simply Mr. Tenev's name with the addition of the functional ending ".com."

48.     Upon information and belief, Defendants' actions in choosing and registering the Disputed Domain were intentional, with actual and constructive knowledge of, Mr. Tenev, RHM, and the VLAD TENEV mark.

49.     Defendants' unauthorized uses of the VLAD TENEV mark are likely to mislead or have actually misled consumers into believing that Defendants' Disputed Domain is sponsored, licensed, approved by, or are otherwise associated or affiliated with, Plaintiffs and the VLAD TENEV mark.

50.     Upon information and belief, Defendants adopted and commenced use of, use, and plan to continue to use the VLAD TENEV mark with the intent and purpose of trading upon the extensive goodwill built up by Plaintiffs in the VLAD TENEV mark, and to reap the benefits of the years of effort invested by Plaintiffs to create public recognition of the VLAD TENEV mark and the services offered thereunder.

///

12

51.     Upon information and belief, Defendants acted in bad faith, in order to cause consumer confusion between the Disputed Domain and Mr. Tenev.

52.     Defendant Zhu's conduct with respect to the Disputed Domain is part of a pattern of bad faith conduct where he registers domains in which he has no legitimate interests, upon information and belief to promote consumer confusion and extort financial compensation for the domain names from the true rights holders.  Defendant Zhu has been named as a respondent in at least six prior Uniform Domain Name Dispute Resolution Policy ("UDRP") proceedings that ordered the subject domains be transferred to the legitimate and true rights holder:

- *Meta Platforms, Inc. v. Libin*, D2025-3813 (WIPO Nov. 7, 2025) (metasuperintelligencelab.com and metasuperintelligencelabs.org);

- *Caribou Coffee Company, Inc. and Arabica Funding, Inc. v. Libin*, FA2411002123418 (FORUM Dec. 3, 2024) (caribouccoffee.com);

- *Guccio Gucci S.p.A. v. libin*, D2024-3827 (WIPO Nov. 21, 2024) (gucciancora.live; gucciancora.online; and gucciancora.shop);

- *Meta Platforms, Inc. v. Libin*, FA2401002080756 (FORUM Feb. 19, 2024) (metaverified.us);

- *Meta Platforms, Inc. v. Libin, Redacted for Privacy, Super Privacy Service LTD c/o Dynadot*, D2023-4222 (WIPO Dec. 5, 2023) (metaverified.asia; metaverified.biz; metaverified.cc; metaverified.club; metaverified.help; metaverified.info; metaverified.link; metaverified.pro; metaverified.shop; and metaverified.site);

- *Meta Platforms, Inc. and Meta Platforms Technologies, LLC v. Libin*, D2022-4996 (WIPO Feb. 8, 2023) (metaquest.horse and metaquest.onl); and

- *Bulgari S.p.A. v. Libin Zhu*, D2019-2694 (WIPO Dec. 12, 2019) (bvlgari.app).

*See* **Exhibit P.**

53.     These prior UDRP decisions against Defendant Zhu show a pattern of bad faith registration and use.

54.     Further evidencing Defendants' bad faith registration is Defendant Zhu's clear pattern of registering domain names that infringe on other prominent trademarks. A reverse WHOIS search

13

for Defendant Zhu's email address revealed 15 other domain names, including domains that appear to incorporate marks used by third parties and prominent individuals, including:

(1)    <babygrok.us> and <grokimagine.us> ("Grok" used at https://grok.com/),

(2)    <chargpt.us> ("ChatGPT" used at https://chatgpt.com/)

(3)    <qivalis.us> ("Qivalis" used at https://qivalis.eu/)

(4)    <kashpatel.us> (*see* https://en.wikipedia.org/wiki/Kash_Patel),

(5)    <seldonlycurg.us> (*see* https://m.economictimes.com/magazines/panache/why-elon-musk-named-his-14th-child-seldon-lycurgus-meaning-and-origins-explained/articleshow/118650317.cms).

*See* **Exhibit Q.**

55.    Mr. Tenev has the right to control the commercial use of his name, persona, and identity. He has the right to exclude anyone from using his name and persona to advertise or sell goods or services without his consent.

56.    Mr. Tenev has no relationship with the Defendants.

57.    Mr. Tenev and RHM on behalf of Mr. Tenev did not and have never provided consent to Defendants to use his name or persona in any way. Had Defendants requested his consent, Mr. Tenev would not have provided it.

58.    Defendants misappropriated Mr. Tenev's name, persona, and identity without permission from Mr. Tenev or RHM on behalf of Mr. Tenev.

59.    Mr. Tenev has interests in his name, persona, and identity, recognized by California statutory and common law. He has an interest in the commercial use of his name, persona, and identity. He has the right to exclude anyone from making commercial use of his name, persona, and identity.

60.    Defendants' conduct constitutes trademark infringement, dilution, unfair competition, false designation of origin, and misappropriation of Mr. Tenev's name, image, and likeness in violation of federal, state and common law. Under the applicable federal and state statutes, Plaintiffs are entitled to not only immediate and permanent injunctive relief against Defendants' continued infringement, but also to recovery of Defendants' profits, treble and punitive damages.

14

**THE UDRP PROCEEDING**

61.     The parties engaged in a UDRP proceeding before the Alternative Dispute Resolution Forum ("Forum") that was instituted in January 2026 related to the Disputed Domain. As part of the instituting of the proceeding, Dynadot was ordered by the FORUM to unmask the owner of the Disputed Domain. Once the registrant was unmasked the UDRP proceeding was formally instituted against Defendant Zhu.

62.     Defendant Zhu did not respond or acknowledge the UDRP Complaint. Having not received any response from the named respondent, on February 13, 2026, the Forum appointed Nicholas J.T. Smith as Panelist, who issued a Notice of Decision and Decision.

63.     Though not precedent or binding on any other forum, including this Court, the Panelist denied the UDRP Complaint.

64.     To date, Defendant Zhu is still the registrant of the Disputed Domain.

**FIRST CAUSE OF ACTION**

**Violation of Anti-Cybersquatting Consumer Protection Act (ACPA)**

**(15 U.S.C. § 1125(d))**

65.     Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by this reference.

66.     The VLAD TENEV mark is a distinctive mark having been used by Mr. Tenev for since at least as early as 2016 in connection with his entertainment and educational focused speaking services, among other things.  In addition, Mr. Tenev owns the active and valid trademark application for VLAD TENEV (U.S. Ser. No. 99687068).

67.     Defendants registered, trafficked in, or used the Disputed Domain.

68.     The Disputed Domain is identical or confusingly similar to Mr. Tenev's name and the VLAD TENEV mark, which he has continuously used as a trademark since at least as early as 2016.

69.     Defendants registered, trafficked in, or used the Disputed Domain in bad faith and with a bad-faith intent to profit from Mr. Tenev's name.

70.     Mr. Tenev's VLAD TENEV trademark was distinctive at the time of Defendants' registration of the Disputed Domain.

15

COMPLAINT

71. Defendants do not have any intellectual property rights or other rights in the VLAD TENEV name.

72. Defendants have not made any prior use of the Disputed Domain in connection with the bona fide offering of goods or services.

73. Defendants have not made any bona fide fair use of Mr. Tenev's name in a website accessible under the Disputed Domain.

74. Defendants have registered multiple domain names which they know are identical or confusingly similar to the mark of others that are distinctive at the time of registration.

75. The Disputed Domain is identical or confusingly similar to Mr. Tenev's personal name, which is protected as a trademark.

76. Defendants' registration, use, or trafficking in the Disputed Domain constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

77. Defendants' conduct has irreparably harmed and, if not enjoined, will continue to irreparably harm the general public which has an inherent interest in being free from confusion, mistake, and deception.

78. As a proximate result of Defendants' conduct, Plaintiffs have suffered, and unless Defendants are enjoined, will continue to suffer, damage to their reputation and goodwill, and injury to the current and potential customer base and investors of Mr. Tenev's businesses, including RHM, which offer services associated with Mr. Tenev's name, trademark, and leadership.

79. Alternatively, at Plaintiffs' election under 15 U.S.C. § 1125(d), instead of actual damages and profits, Plaintiffs are entitled to an award of statutory damages for the Infringing Domain.

80. Defendants committed their wrongful acts willfully and with notice of Plaintiffs' rights. This is an exceptional case under 15 U.S.C. § 1117(a), making Plaintiffs eligible for an award of their reasonable attorneys' fees.

///

///

///

16

COMPLAINT

## SECOND CAUSE OF ACTION

### Violation of Anti-Cybersquatting Consumer Protection Act (ACPA) *in rem*

### (15 U.S.C. § 1125(d)(2)) (As to www.VLADTENEV.com)

81.     Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by this reference.

82.     The VLAD TENEV mark is a distinctive mark having been used by Mr. Tenev for over ten years in connection with his entertainment and educational focused speaking services, among other things.  In addition, Mr. Tenev owns the active and valid trademark application for VLAD TENEV (U.S. Ser. No. 99687068).

83.     On information and belief, Defendant Zhu and Does registered, trafficked in, and/or used the domain name www.VLADTENEV.COM.

84.     VLADTENEV.com is identical or confusingly similar to the distinctive VLAD TENEV mark.

85.     Defendants Zhu and Does registered the Disputed Domain with a bad faith intent to profit from the confusing similarity between the Disputed Domain and the VLAD TENEV mark. On information and belief, Defendants did not obtain a legal right to use the Disputed Domain, which they are now using for Defendants' personal gain.

86.     Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to damage Plaintiffs unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

87.     Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Disputed Domain to Plaintiffs or forfeiture or cancellation of Defendants' registration of the Disputed Domain.

88.     Plaintiffs have been forced to hire legal counsel to pursue their claims against Defendants and are entitled to reasonable attorneys' fees and costs incurred in prosecuting this action to protect their rights.

///

///

COMPLAINT

89. Plaintiffs intend to send this complaint as a notice of alleged violations to the registrants of the Disputed Domain at the postal and e-mail addresses provided by Defendants to Dynadot, pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(aa).

## THIRD CAUSE OF ACTION

### Federal Trademark Infringement

### U.S.C. § 1125(a))

90. Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by reference.

91. Defendants' use in commerce of the VLAD TENEV mark in the United States is likely to cause confusion, mistake, or deception, and constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).

92. As a direct and proximate result of Defendants' activities as alleged above, Plaintiffs have suffered damage. Unless Defendants are restrained by the Court, they will continue and/or expand their unlawful activities alleged above, by infringing the VLAD TENEV mark and otherwise continue to cause irreparable damage and injury to Plaintiffs. No amount of money damages can adequately compensate Plaintiffs if they lose the ability to control the use of the VLAD TENEV mark, reputation, and goodwill through the false and unauthorized use of the trademark. Plaintiffs are therefore entitled to injunctive relief prohibiting Defendants from using the VLAD TENEV mark or any other trademark or designation which is likely to be confused with the VLAD TENEV mark.

93. Upon information and belief Defendants' conduct was designed and undertaken for the purpose of unfairly competing with Plaintiffs or otherwise trading on their reputation.

94. Defendants' conduct is without Plaintiffs' permission or authority. Upon information and belief, prior to beginning this use, Defendants had actual knowledge of Mr. Tenev's senior rights in the VLAD TENEV mark. As a result, Defendants have committed their infringement with full knowledge of Plaintiffs' rights in the VLAD TENEV mark, and have willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiffs and to deceive the public.

95. Upon information and belief, Defendants have profited from this trademark infringement.

18

COMPLAINT

96.     This is an exceptional case under 15 U.S.C. § 1117(a). Defendants' willful conduct has caused damage to Plaintiffs in an amount to be determined at trial, and unless restrained, will continue to cause serious and irreparable injury for which there is no adequate remedy at law.

97.     In light of the foregoing, Plaintiffs are entitled to injunctive relief, and to recover from Defendants all damages, including lost profits and attorneys' fees, that Plaintiffs have sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant enhancement pursuant to 15 U.S.C. § 1117(a), as well as the costs of this action. Plaintiffs are also entitled to an accounting of Defendants' profits resulting from their Lanham Act violations.

### FOURTH CAUSE OF ACTION

**Federal Unfair Competition and False Designation of Origin**

**(15 U.S.C. § 1125(a))**

98.     Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by this reference.

99.     Defendants' use in commerce of the VLAD TENEV mark is likely to cause confusion, mistake or deception and constitutes a false designation of origin, false description, and false representation of Defendants' goods and/or services, and a false representation that Defendants' goods and/or services originate with or are sponsored, endorsed, licensed, authorized, and/or affiliated or connected with Plaintiffs in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

100.    As a direct and proximate result of Defendants' activities as alleged above, Plaintiffs have suffered damage. Unless Defendants are restrained by the Court, they will continue and/or expand their unlawful activities alleged above and continue to cause irreparable damage and injury to Plaintiffs. No amount of money damages can adequately compensate Plaintiffs if they lose the ability to control the use of their mark, reputation, and goodwill through the false and unauthorized use of its trademark. Plaintiffs are therefore entitled to injunctive relief prohibiting Defendants from using the VLAD TENEV mark or any other trademark or designation which is likely to be confused with the VLAD TENEV mark.

101.    Upon information and belief Defendants' conduct was designed and undertaken for the purpose of unfairly competing with Plaintiffs.

19

COMPLAINT

102.    Upon information and belief, Defendants have profited from this unfair competition and false designation of origin.

103.    This is an exceptional case under 15 U.S.C. § 1117(a). Defendants' willful conduct has caused damage to Plaintiffs in an amount to be determined at trial, and unless restrained, will continue to cause serious and irreparable injury for which there is no adequate remedy at law.

104.    In light of the foregoing, Plaintiffs are entitled to injunctive relief, and to recover from Defendants all damages, including lost profits and attorneys' fees, that Plaintiffs have sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant enhancement pursuant to 15 U.S.C. § 1117(a), as well as the costs of this action. Plaintiffs are also entitled to an accounting of Defendants' profits resulting from its Lanham Act violations.

### FIFTH CAUSE OF ACTION

### Violation of California's Unfair Competition Laws

### (Cal. Bus. & Prof. Code § 17200 *et. seq.*)

105.    Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by this reference.

106.    Defendants' conduct as alleged herein constitutes unlawful, unfair, or fraudulent business acts or practices within the meaning of California Business and Professions Code §§ 17200, *et seq*.

107.    California Business and Professions Code §§ 17200, *et seq*., provides that unfair competition shall mean and include all unlawful, unfair, or fraudulent business practices, among other things.

108.    Defendants' business practices alleged above are unlawful, unfair and fraudulent and offend public policy as they are unscrupulous, and substantially injurious to Plaintiffs and to consumers.

109.    Defendants' conduct constitutes willful and deliberate unfair competition in wanton disregard of Plaintiffs' valuable intellectual property rights. Upon information and belief, Plaintiffs have suffered damages and Defendants have obtained profits or been unjustly enriched as a result of Defendants' wrongful conduct.

COMPLAINT

110. Plaintiffs have incurred expenses or lost money as a result of the unfair competition.

111. Defendants' conduct has directly and proximately caused and will continue to cause Plaintiffs substantial and irreparable injury, including consumer confusion, injury to its reputation, and diminution in value of its intellectual property, and unless restrained, will continue to seriously and irreparably impair further the value of Plaintiffs' VLAD TENEV mark, for which there is no adequate remedy at law.

112. In light of the foregoing, Plaintiffs are entitled to injunctive relief under Cal. Bus. & Prof Code §§ 17200, *et seq*. restraining Defendants from engaging in further unlawful conduct, as well as restitution of those amounts unlawfully obtained by Defendants through their wrongful conduct.

## SIXTH CAUSE OF ACTION

### Common Law Trademark Infringement

113. Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by this reference.

114. The VLAD TENEV mark constitutes a protectable trademark that has acquired distinctiveness. Defendants' use of a copy, variation, simulation or colorable imitation of the VLAD TENEV mark infringes Plaintiffs' exclusive rights in the VLAD TENEV mark, and is likely to cause confusion, mistake, or deception and constitutes trademark infringement, in violation of California common law.

115. Defendants' conduct is without Plaintiffs' permission or authority. Upon information and belief, prior to beginning this use, Defendants had actual knowledge of Mr. Tenev's senior rights in the VLAD TENEV mark. As a result, Defendants have committed their infringement with full knowledge of Plaintiffs' rights in the VLAD TENEV mark, and have willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiffs.

116. Defendants' willful conduct has caused damage to Plaintiffs in an amount to be determined at trial, and unless restrained, will continue to cause serious and irreparable injury for which there is no adequate remedy at law. Upon information and belief, Defendants have profited from this activity.

117. In light of the foregoing, Plaintiffs are entitled to injunctive relief and to recover from Defendants all damages, including lost profits and attorneys' fees, that Plaintiffs have sustained and will sustain as a result thereof, in an amount not yet known, as well as the costs of this action.

### SEVENTH CAUSE OF ACTION

### Violation of California Civil Code § 3344 et seq.

118. Plaintiffs restate and reallege each of the allegations set forth above and incorporate them herein by this reference.

119. California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

120. By engaging in the foregoing acts, Defendants used and use Mr. Tenev's name, persona, and identity without prior consent.

121. Mr. Tenev's name and persona have commercial value, as demonstrated by Defendants' commercial use.

122. Defendants are attempting to sell or soliciting purchases of goods or services by, among other things, using Mr. Tenev's name, identity and likeness.

123. Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

124. As a result of Defendants' violation of Cal. Civ. Code § 3344, Mr. Tenev has suffered injury and will imminently suffer further injury.

125. Defendants have injured and continue to injure Mr. Tenev by misappropriating his name and likeness without his consent. Mr. Tenev has suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of his name and persona. Mr. Tenev has also suffered and will continue to suffer,

///

22

COMPLAINT

monetary harm in the amount of Defendants' unjust enrichment through its illegal use of his name and persona.

126.   Defendants have injured and continue to injure Mr. Tenev by invading and denying him the right to control the commercial use of his name and persona, which is a substantive right long recognized at common law and codified in California's right of publicity statute.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs requests that judgment be entered in their favor against Defendants as follows:

1.   For an order and judgment that Defendants have infringed the VLAD TENEV mark in violation of Mr. Tenev's rights under federal law, common law, and/or California law;

2.   For an order and judgment that Defendants have unfairly competed with Plaintiffs in violation of Plaintiffs' rights under 15 U.S.C. § 1125(a) and California law;

3.   For an order and judgment that Defendants have acted in bad faith, willfully, intentionally, and/or in reckless disregard of Plaintiffs' rights;

4.   For an order permanently enjoining and restraining Defendants and all persons in active concert or participation with them:

a.   From using or registering the VLAD TENEV mark or any other trademark, tradename, domain name, or other designation that comprises or includes "VLAD TENEV;"

b.   To immediately transfer all domain names that include "VLAD TENEV" to Plaintiffs, including but not limited to <VLADTENEV.COM>; and

c.   From engaging in conduct intended to mislead or confuse consumers such as that specified in this complaint or other similar advertisements;

5.   For an order requiring Defendants to permanently remove all references to "VLAD TENEV" or any other trademark, tradename, domain name, or other designation that comprises or includes "VLAD TENEV" from any website or social media platform;

6.   For an order requiring Defendants to permanently cease use of Mr. Tenev's name, image, or likeness in any capacity;

///

23

COMPLAINT

7.      For an order requiring Defendants to file with the Court and serve upon Plaintiffs within fifteen (15) days after issuance of any injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

8.      For an order awarding Plaintiffs:

a.      All profits derived by Defendants' wrongful acts complained of herein;

b.      All damages sustained by reason of Defendants' wrongful acts complained of herein;

c.      Treble the amount of actual damages suffered by Plaintiffs under 15 U.S.C. § 1117(a);

d.      Restitution for Defendants' unfair business practices pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

e.      Punitive and exemplary damages in an amount sufficient to deter and punish Defendants for their willful and wrongful acts;

f.      Their costs incurred in this action;

g.      Their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a); and

h.      Pre-judgment and post-judgment interest;

9.      For such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

DATED: March 20, 2026                **DUANE MORRIS LLP**

By: */s/ Jennifer M. Lantz*
Jennifer M. Lantz (SBN 202252)
Jeremy T. Elman (SBN 223696)
Lauren C. Matturri (*Pro Hac Vice* application pending)
**DUANE MORRIS LLP**
260 Homer Avenue, Suite 202
Palo Alto, CA 94301-2777
Phone:        650-847-4150
Facsimile:    650-847-4151
Email:        jmlantz@duanemorris.com
              jelman@duanemorris.com
              lmatturri@duanemorris.com

Attorneys for Plaintiffs
VLADIMIR TENEV and
ROBINHOOD MARKETS, INC.

24

COMPLAINT