UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBINHOOD MARKETS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LIBIN ZHU, et al.,<br><br>Defendants. | Case No. 26-cv-02469-JST<br><br>**ORDER DENYING EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 4 |

Before the Court is Plaintiffs' motion for an *ex parte* temporary restraining order and order to show cause why a preliminary injunction should not issue. ECF No. 1. The Court will deny the motion for temporary restraining order but order Defendants to show cause why they should not be preliminarily enjoined pending resolution of this action.

## I.    BACKGROUND

Plaintiffs Vladimir Tenev and Robinhood Markets, Inc. (Robinhood) filed this complaint against Defendants Libin Zhu, Dynadot Inc. ("Dynadot"), and Does 1-10 for violation of the Lanham Act and the Anti-Cybersquatting Consumer Protection Act ("ACPA"), unfair competition, common law trademark infringement, and misappropriation under Cal. Civil Code § 3344. ECF No. 1 ¶ 2–3. Tenev, who goes by "Vlad Tenev," is the founder of Robinhood, an investment platform. *Id.* ¶ 24. Plaintiffs claim that Tenev utilizes the mark "Vlad Tenev" to promote himself and his offerings as a public speaker. *Id.* ¶ 33–34, 41.

Plaintiffs allege that Defendant Zhu registered the domain name vladtenev.com several months ago with the domain registrar Defendant Dynadot. *Id.* ¶¶ 16, 44–45. Plaintiffs allege that as of January 5, 2026, the website hosted on the domain offered the domain name for sale for $ 16,800. ECF No. 1 ¶ 45. Plaintiffs claim that the mark was intentionally registered to mislead

customers and that the Defendants adopted the mark in bad faith to trade on Plaintiffs' business goodwill. *Id.* ¶¶ 48–54. Plaintiffs initiated a Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding in front of the Alternative Dispute Resolution Forum in January 2026. *Id.* ¶ 61. In February 2026, the appointed panelist denied the UDRP claim. *Id.* ¶¶ 62–63.

Plaintiffs filed this complaint on March 20, 2026. ECF No. 1. Shortly thereafter, Plaintiffs filed the instant motion for an *ex parte* temporary restraining order and an order to show cause why a preliminary injunction should not issue. ECF No. 4.

## II.    JURISDICTION

This Court has original jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331. The Court has jurisdiction over the state claims under 28 U.S.C. § 1367.

## III.   LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). As to the first factor, a plaintiff is "not required to prove their claim but only must show that they [are] likely to succeed on the merits." *Glossip v. Gross*, 135 S.Ct. 2726, 2792 (2015). The Ninth Circuit employs a "sliding scale" approach to the four factors relevant to preliminary injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

In addition, a movant seeking the issuance of an *ex parte* TRO must satisfy Federal Rule of Civil Procedure 65(b), which requires that "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and certification of "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## IV.   DISCUSSION

Plaintiffs seek a temporary restraining order pursuant to the Lanham Act, ACPA, and California Civil Code § 3344 to prevent Defendants' illegal cybersquatting. Because Tenev's personal name is unlikely to be protected under the Lanham Act, the court does not find that the Plaintiffs are likely to succeed on the merits of their Lanham Act, ACPA, or § 3344 misappropriation claims.

### A.   Lanham Act and ACPA Claim

Congress passed the ACPA in 1999, amending the Lanham Act and adding two new causes of action aimed specifically at cybersquatting. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 549 (9th Cir. 2013). "[C]ybersquatting occurs when a person other than the trademark holder registers the domain name of a well-known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir.2005) (quoting *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 672, 689 (6th Cir. 2004)). To prevail on a cybersquatting claim under the ACPA, "the owner of a mark, including a personal name which is protected as a mark under this section" must show that the defendant:

> (i)   has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii)   registers, traffics in, or uses a domain name that—
> (a) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> (b) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> (c) is a trademark, word, or name protected by reason of

section 706 of title 18 or section 220506 of title 36. 15 U.S.C. § 1125(d)(1)(A).

Here, the key language is the statute's reference to "a personal name *which is protected as a mark under this section.*" *Id.* (emphasis added). Under the Lanham Act, a personal name is a descriptive term. *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1222 (C.D. Cal. 2000). "A descriptive mark receives trademark protection only when it establishes 'secondary meaning' in the marketplace." *Black v. Irving Materials, Inc.*, 2019 WL 1995342, at *5 (N.D. Cal. May 6, 2019) (citing *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 13:2 (5th ed. 2025). And secondary meaning only "occurs when 'in the minds of the public, the primary significance of [the name] is to identify the source of the product rather than the product itself.'" *Polin v. Behrman*, 2010 WL 11545054 at *4 (C.D. Cal. Dec. 13, 2010), *aff'd*, 429 F. App'x 682 (9th Cir. 2011) (citing *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211(2000)).

Here, Defendants are using Vlad Tenev's personal name in the domain name of a website, vladtenev.com. While the ACPA can apply to personal names, § 1125(d)(1)(A) clarifies that a cause of action is available only when the infringing domain includes "a personal name which is protected as a mark under this section [the Lanham Act]." Plaintiffs suggest that "Vlad Tenev" is a "trademark" that uniquely identifies him "with respect to his public speaking services." ECF No. 4-1 at 8. The Court is not persuaded. For "Vlad Tenev" to have acquired secondary meaning in this way, that mark would have to identify "public speaking services" in the minds of the public rather than Vlad Tenev the individual. *Cairns*, 107 F. Supp. 2d at 1222 (citing *Wal–Mart Stores, Inc., v. Samara Brothers Inc.,* 529 U.S. 205, 211 (2000). *Visser v. Macres,* 214 Cal.App.2d 249, 253 (1963) (secondary meaning does not attach as a word identifying goods or services until the goods or services submerge the primary meaning of the name as a word identifying a person). "Such secondary meaning grows out of long association of the name with the business, and thereby becomes the name of the business as such; is acquired when the name and the business become synonymous in the public mind; and submerges the primary meaning of the name as a

United States District Court
Northern District of California

word identifying a person, in favor of its meaning as a word identifying that business." *Visser v. Macres*, 214 Cal. App. 2d 249, 253 (1963). The Court finds it implausible that the meaning of "Vlad Tenev" as a public speaker has submerged its meaning as a way of identifying a person.

*Cairns* is instructive. In that case, Plaintiffs alleged that the name "Princess Diana of Wales" had acquired the secondary meaning of identifying charitable and humanitarian services rather than the individual herself, but the court was not persuaded. It found that "[a] finding of secondary meaning in this case would mean that the words 'Diana, Princess of Wales' would no longer primarily identify the individual, Princess Diana, but instead identify plaintiffs' charitable activities. This is an absurd contention to say the least." *Cairns*, 107 F. Supp. 2d at 1222; *see also Polin*, 2010 WL 11545054 at *4 (finding that the name of a plaintiff who practiced family law had not gained secondary meaning as long as the name identified the plaintiff rather than services she offered).

Here, other than conclusory assertions that "Vlad Tenev" has acquired the secondary meaning of a trademark identifying Tenev's public speaking services, Plaintiffs provide no evidence that Tenev's personal name references his financial and motivational speaking services rather than identifying Tenev himself. ECF No. 4-1 at 8–9. In fact, as Plaintiffs repeatedly mention in their motion, Tenev is known in substantial part due to his co-founding and chairmanship of Robinhood, a well-known trading platform. ECF No. 4-1 at 9–10. If anything, it seems likely that this notoriety, rather than anything intrinsic to the mark, explains the demand for Tenev's speaking services.

Accordingly, at this stage, the Court concludes that Plaintiffs have not made a sufficient showing on the merits as to their ACPA or Lanham Act claims.

### B.    California Right to Publicity Claim

Plaintiffs also seek a temporary restraining order based on their claim under California's right of publicity statute. Cal. Civ. Code § 3344 *et seq*. To state a cause of action under § 3344, plaintiff must plead sufficient facts to establish "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent;" "(4) resulting injury;" (5) "a knowing use by the defendant," and

5

(6) "a direct connection between the alleged use and the commercial purpose." *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1001 (9th Cir. 2001) (citing *Eastwood v. Superior Court,* 149 Cal. App. 3d 409, 416 (1983)).  When section 3344 has been violated, a plaintiff may recover "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use."  Cal. Civ. Code § 3344(a)(1).  As of January 1, 2026, the statute also authorizes parties to seek an injunction or temporary restraining order under Cal. Civ. P. Code § 527.  Cal. Civ. Code § 3344(a)(2).

Plaintiffs allege that Defendants' usage of vladtenev.com without Tenev's consent meets the elements of section 3344, and specifically that "this use was for the purpose of selling or soliciting the sale of a domain name, which is clearly a commercial use."  ECF No. 4-1 at 19–20.  Plaintiffs claim that Defendants' knowledge is established by Zhu's ownership of other websites and illegally registered marks, and that there is a direct connection between the use of the vladtenev.com website registration and the commercial use in Defendants' (now removed) efforts to sell the domain name for thousands of dollars.  *Id.*

The elements of a claim under § 3344 have been stated at different levels of generality. The California state court pattern instruction for this claim requires a plaintiff to prove that the defendant "knowingly used plaintiff's" name on merchandise "or to advertise or sell" a product. CACI No. 1804A.  It is unclear at best that Plaintiffs alleged that Defendants are using Vlad Tenev's name to advertise or sell any product or merchandise.  While the website may have attempted to sell the domain name itself, it does not utilize Vlad Tenev's name to advertise or sell the product simply by using the mark in the domain title.  Pattern jury instructions, however, "are not themselves the law, and are not authority to establish legal propositions or precedent." *People v. Reynoza*, 15 Cal. 5th 982, 1011 (2024).  Also, some courts have described section 3344 claims at a level of generality that is broad enough potentially to encompass the facts before the Court. *See, e.g., Robinson v. Delicious Vinyl Recs. LLC*, No. CV134111CASPLAX, 2013 WL 12144100, at *4 (C.D. Cal. Oct. 7, 2013) ("Section 3344 of the California Civil Code permits a plaintiff to recover damages for the knowing use of his voice, name, or likeness, for the purpose of trade,

without his consent."). While Plaintiffs do not cite, and the Court has been unable to locate, authority finding a violation of section 3344 on similar facts, the Court concludes that Plaintiffs have shown at least serious questions going to the merits of their section 3344 claim.

However, the Court does not find that a temporary restraining order is warranted because Plaintiffs delayed excessively in seeking relief. Plaintiffs learned of the domain takeover and advertisement for sale as early as January 5, 2026, ECF No. 1 ¶ 45, but did not seek relief from this Court until March 20, 2026. ECF No. 1.

"A plaintiff's delay in seeking relief weighs against granting a TRO or preliminary injunction." *Perez v. City of Petaluma*, No. 21-cv-06190-JST, 2021 WL 3934327, at *1 (N.D. Cal. Aug. 13, 2021); *see also Dahl v. Swift Distrib., Inc.*, No. CV 10-00551 SJO (RZx), 2010 WL 1458957, at *4 (C.D. Cal. Apr. 1, 2010) (concluding that an 18-day delay "implies a lack of urgency and irreparable harm"). While Plaintiffs sought relief in a UDRP proceeding within weeks of their discovery, they could have concurrently sought relief in federal court. *See Super-Krete Intern., Inc. v. Sadleir*, 712 F.Supp.2d 1023, 1034 (C.D. Cal. 2010) (discussing that court proceedings can occurring before, during, and after a UDRP dispute resolution procedure is invoked). Further, Plaintiffs waited more than a month after the UDRP verdict on February 13, 2026 to file this *ex parte* TRO request. "Parties facing the threat of immediate and irreparable harm generally seek a temporary restraining order as quickly as possible." *Lee v. Haj*, No. 1:16-cv-00008-DAD-SAB, 2016 WL 8738428, at *2 (E.D. Cal. Feb. 22, 2016). Plaintiffs' unexplained delay in seeking relief undermines their claim that they will suffer irreparable harm in the absence of a TRO. *Devasahayam v. DMB Cap. Grp.*, No. 3:17-cv-02095-BEN-WVG, 2017 WL 6547897, at *4 (S.D. Cal. Dec. 20, 2017) (holding that one month delay was "reason enough to deny a TRO"). In the absence of a showing of irreparable harm, the Court need not examine the remaining *Winter* factors. Plaintiffs' request for a TRO is denied.

**CONCLUSION**

For the reasons set forth above, the Court denies the motion for a temporary restraining order.

However, Defendants are ordered to show cause why they should not be preliminarily

enjoined as follows:

1.    That Defendant Dynadot, and any other domain registrar of the Disputed Domain, shall immediately transfer the Disputed Domain to Plaintiffs;

2.    That Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all persons in active concert or participating with any of them, be preliminarily enjoined from:

a.    advertising, marketing, promoting, selling, offering for sale or authorizing any third party to advertise, market, promote, sell and offer for sale any goods or services bearing the VLAD TENEV mark, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the VLAD TENEV mark;

b.    engaging in any activity that infringes Plaintiffs' rights in the VLAD TENEV mark;

c.    engaging in any activity that constitutes unfair competition with Plaintiffs;

d.    using or authorizing any third party to use any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiffs;

e.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that the products or services promoted, offered, or sponsored by Defendants are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs, or that Plaintiffs' products and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

f.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the VLAD TENEV mark or any other mark that infringes or is likely to be confused with the VLAD TENEV mark, or any products or services of Defendants; and

8

g.        assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in above subparagraphs.

A hearing on this order to show cause will be held on April 30, 2026 at 9:30 a.m. Plaintiffs shall serve this order on Defendants forthwith.  Defendants' opposition shall be filed no later than April 17, 2026.  Plaintiffs' reply is due April 23, 2026.

Subject to the Court's availability, the parties may stipulate to modify the briefing and hearing schedule.  Plaintiffs' requests for expedited discovery are denied without prejudice.

**IT IS SO ORDERED.**

Dated:  April 3, 2026



JON S. TIGAR
United States District Judge